

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-17-2005

# Burr v. Hasbrouck Heights

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1121

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Burr v. Hasbrouck Heights" (2005). *2005 Decisions.* Paper 1180.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1180

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-1121

———————

JOANNE BURR,
Appellant

v.

HASBROUCK HEIGHTS POLICE
DEPARTMENT; GEORGE NETELKOS;
COREY LANGE

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 01-cv-03296
District Judge:  The Honorable William H. Walls

———————

Argued:  April 4, 2005

———————

Before: BARRY, AMBRO, and COWEN, <u>Circuit Judges</u>

———————

(Filed: May 17, 2005 )

———————

Dennis A. Cipriano, Esq. (Argued)
200 Executive Drive
West Orange, NJ  07052

<u>Counsel for Appellant</u>

Anthony P. Seijas, Esq. (Argued)
Christine M. Vanek, Esq.
Scarinci & Hollenbeck
1100 Valley Brook Avenue
P.O. Box 790
Lyndhurst, NJ  07071

Counsel for Appellees

_____

OPINION

_____

BARRY, Circuit Judge

This appeal involves a claim by Joanne Burr ("Burr"), brought under 42 U.S.C. § 1983, that the actions of the Hasbrouck Heights Police Department ("HHPD") and two of its Officers violated her Fourth Amendment rights.  After concluding that the Officers were entitled to qualified immunity, the District Court granted defendants' motion for summary judgment.  We have jurisdiction under 28 U.S.C. § 1291, and will affirm.

**I.**

We write only for the benefit of the parties and therefore will limit our discussion to those facts that are material to the disposition of this appeal.  On the evening of October 15, 2000, the HHPD received a noise complaint. The caller, who did not identify herself, stated that loud music was coming from a residence that turned out to be Burr's home.  Officer George Netelkos ("Netelkos") was dispatched to investigate.  Netelkos testified that after arriving at the residence, he knocked on the door and rang the doorbell

for approximately one minute. After failing to receive a response, he opened the unlocked door and entered the residence to abate the putative nuisance and to "make sure everything was okay in there." App. at 38. Netelkos followed the sound of the music to a room on the second floor, where Burr was sitting alone. Netelkos began questioning her. At some point during the questioning, Burr's somewhat bizarre behavior and the smell of alcohol suggested to Netelkos that she would not be safe if left alone. Moreover, Burr concedes that Netelkos knew of her from a previous disturbance-of-the-peace complaint, a recent spate of domestic violence between Burr and her sister, and numerous episodes of "eccentric, albeit benign, interaction" between Burr and law enforcement within the previous five to six-month period. App. Br. at 16. Officer Corey Lange arrived to provide assistance, and Burr was removed by EMS to the Bergen Regional Medical Center.

Lab tests determined that Burr's blood alcohol level was .213, well above the legal limit. Burr does not dispute that she had been drinking alcohol, listening to religious music, and "singing to God." ASA at 246. A doctor at the hospital prescribed 5 mg.s' of Haldol, an anti-psychotic used to manage hyperactivity, mania, and agitation and 2 mg.s' of Ativa, for anxiety. Burr refused the medication.

Burr also underwent a psychiatric assessment. The doctor diagnosed alcohol abuse, and probable alcohol-induced mood disorder with manic features. Burr was released seven hours after admission.

3

These basic facts are generally not in dispute although the parties have surely put their own spin on them.

## II.

We exercise *de novo* review of the District Court's grant of summary judgment. *See Kopec v. Tate*, 361 F.3d 772, 775 (3d Cir. 2004). A grant of summary judgment is proper when the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56 (c). In reviewing the record, we draw inferences from the underlying facts in the light most favorable to Burr, as the party opposing the motion. *See Kopec*, 361 F.3d at 775. In addition, when Burr's allegations conflict with those of officers, we take her allegations as true if supported by proper proofs. *See id.*

## III.

In her complaint, Burr charged Officers Netelkos and Lange with various common law causes of action, including assault and battery and false imprisonment, and various violations of her constitutional rights. She invoked *respondeat superior* liability as to the HHPD. Despite the wide ranging claims in her complaint, Burr's appeal focuses on the grant of summary judgment to Netelkos and Lange for their alleged violations of her constitutional rights. She primarily focuses on the warrantless entry by Netelkos and, to a

4

lesser extent, the alleged excessive use of force by Netelkos and Lange,[1] both claimed to

be in violation of her Fourth Amendment rights.

## A.    **Qualified Immunity**

Section 1983 provides a remedy for the deprivation of rights secured by the

Constitution and  federal law.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).  A

prima facie case under section 1983 requires a plaintiff to demonstrate that a person

acting under color of state law deprived him or her of a federal right.  It is undisputed

that, during the events at issue here, the Officers were acting under color of state law.

Government officials performing discretionary functions are generally entitled to

qualified immunity.  *See Wilson v. Layne*, 526 U.S. 603, 609 (1999).  Qualified immunity

is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v.*

*Katz*, 533 U.S. 194, 200 (2001) (quotation and citation omitted).  The Supreme Court has

emphasized that it is "an *immunity from suit* rather than a mere defense to liability." *Id.*

(quotation and citation omitted).  Even so, a government official has the burden of

establishing that he is entitled to such immunity.  *See Kopec*, 361 F.3d at 776.

When considering an officer's defense of qualified immunity, we must examine, as

---

[1]Also, in the most summary fashion possible and citing no relevant law, Burr
concludes that Netelkos and Lange "effectively arrested" her and wrongly caused her to
be confined in the hospital.  We conclude that, given the circumstances, it was reasonable
for Officers Netelkos and Lange to believe that Burr posed an imminent threat of bodily
harm at least to herself, even if the Officers were wrong.  Thus, there was no violation of
Burr's constitutional rights.

a threshold matter, whether the facts alleged, taken in the light most favorable to the plaintiff, violated a constitutional right. *Saucier,* 533 U.S. at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* If, however, it has been shown that a constitutional right has been violated, it must be determined whether the right was clearly established in the specific context of the case. *See Brosseau v. Haugen*, 543 U.S. __, 125 S. Ct. 596, 599 (2004) (per curiam); *see also Saucier*, 533 U.S. at 202 (noting that an officer is entitled to qualified immunity unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"). In order to determine if the law was clearly established, we must examine "whether the state of the law at the time the violation occurred" gave defendants "fair warning that their alleged treatment [of the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

## 1. Warrantless Entry

The District Court held that Burr cannot establish a claim based on warrantless entry because Netelkos' conduct was objectively reasonable and he was entitled to prevail on a qualified immunity defense. The Court relied on the Sixth Circuit's decision in *United States v. Rohrig*, 98 F.3d 1506, 1519-22 (6th Cir. 1996), which extrapolates from *Cady v. Dombrowski*, 413 U.S. 433 (1973), and *People v. Lanthier*, 488 P.2d 625 (Cal. 1971), that an officer's "community care taking function" permits a warrantless entry of a

6

home in order to abate a nuisance.[2] The Sixth Circuit used *Cady's* "community care taker" rationale and fashioned a new exigency exception – the police may enter a home without a warrant in order to abate an ongoing nuisance occurring in the late night-early morning hours. The *Rohrig* Court explained that the officers' warrantless entry did not violate the Fourth Amendment because "a compelling governmental interest supports warrantless entries where, as here, strict adherence to the warrant requirement would subject the community to a continuing and noxious disturbance for an extended period of time without serving any apparent purpose." *Id.* at 1522.

None of our sister courts of appeals has followed *Rohrig* in a published opinion, and we see no need to do so because the facts, viewed in the light most favorable to Burr, do not suggest that any disturbance she was creating rose to the level of a "noxious disturbance" that involved an "immediate, ongoing and highly objectionable nuisance." *Rohrig*, 98 F.3d at 1522, 1525 n.11. We will, therefore, assume that Netelkos's warrantless entry was not reasonable and violated Burr's Fourth Amendment rights.

We turn, then, to whether, given the circumstances, Burr's right to be free from a warrantless entry into her home was clearly established. Burr does not cite any law that

---

[2]In *Rohrig*, two police officers received a noise complaint sometime after 1:30 a.m. Shortly after arriving on the scene, "somewhere between four and eight pajama clad neighbors emerged from their homes to complain about the noise." *Id.* at 1509. The officers, in an effort to abate the nuisance, began knocking on the front door. The officers did not receive a response, so they began to shout into the house in order to gain the attention of the occupant. No one ever came to the door, so the officers opened the unlocked door and entered the home to search for the source of the nuisance.

states that an officer, responding to a complaint and knowing of recent disturbances, cannot enter a home "to make sure everything was okay." Burr, however, was required to show that the law placed Netelkos on notice that his conduct was unlawful. *See Brosseau*, 543 U.S. at __, 125 S.Ct. at 599. "If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Id.* Netelkos was entitled to qualified immunity on the warrantless entry claim.

## 2. **Excessive Force**

Burr alleges that Netelkos and Lange violated her Fourth Amendment rights when they forcefully restrained her while she was in the process of being removed to the hospital. This "manhandling" caused some "small bruises" on her arms. A-209.

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Kopec*, 361 F.3d at 776 (citation omitted). The Supreme Court has also repeatedly emphasized that "because police officers are often forced to make split second judgments . . . about the amount of force that is necessary in a particular situation, the reasonableness of the officers' belief as to the appropriate level of force should be judged from that on-scene perspective." *Saucier*, 533 U.S. at 205 (quotation and citations omitted). "The test of reasonableness under the Fourth Amendment is whether under the totality of the circumstances, 'the officers' actions are "objectively reasonable" in light of

8

the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" *Kopec*, 361 F.3d at 776 (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

The District Court found that the conduct of Officers Netelkos and Lange was objectively reasonable and not a clear violation of Burr's rights. A reasonable officer could well have believed, as the Officers claimed to have believed here, that Burr was attempting to flee to avoid being taken to the hospital. Burr argues that she was not attempting to flee, although in her deposition she testified that, once she was downstairs, she "started for the door." App. at 73. Moreover, two of her neighbors testified that she ran toward the door. The test, of course, is what a reasonable officer would have perceived. Thus, even viewing the facts and reasonable inferences therefrom in Burr's favor, it is fair to say that the Officers observed her running towards the door, and then, to prevent her from fleeing, grabbed her arms and put her on a stretcher. *Id.* As a result, her arms received some "small bruises." These facts do not suggest that the amount of force used was objectively unreasonable. Accordingly, Netelkos and Lange did not violate Burr's rights by forcibly restraining her.

**IV.**

We will affirm the December 9, 2003 order of the District Court.[3]

---

[3]Although the District Court did not address in any detail the claims against the HHPD, we note that liability was alleged to be based primarily on principles of *respondeat superior* and, thus, Burr could not have prevailed against the HHPD given the