

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-20-2005

# Word v. Postmaster General

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3892

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Word v. Postmaster General" (2005). *2005 Decisions.* Paper 520.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/520

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-3892

———————

HERMAN A. WORD,
                            Appellant

v.

JOHN E. POTTER, POSTMASTER GENERAL;
UNITED STATES POSTAL SERVICE

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil 02-cv-06043)
District Judge:  The Honorable Freda L. Wolfson

———————

Submitted Under Third Circuit LAR 34.1(a)
September 13, 2005

———————

Before: SLOVITER, BARRY, and SMITH, Circuit Judges

———————

(Opinion Filed: September 20, 2005)

———————

OPINION

———————

BARRY, Circuit Judge

Plaintiff Herman A. Word ("Word") commenced this employment discrimination

action against Postmaster General John E. Potter, in his official capacity, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16. On September 9, 2004, the District Court granted defendant's motion for summary judgment, concluding that Word had failed to timely exhaust his administrative remedies. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331; our jurisdiction arises from 28 U.S.C. § 1291. For the reasons set forth below, we will affirm.

## I.

Because we write primarily for the parties, our discussion of the factual and procedural background will be limited to those issues central to our disposition. At all relevant times, Word was employed by the United States Postal Service ("USPS") in Trenton, New Jersey. Word suffered an employment-related injury in 1987 and, after undergoing surgery and related therapy, accepted the position of "rehabilitated modified senior carrier" in June 1995. The duties associated with this new position were tailored to conform to Word's medical limitations.

Word avers that in December 1995 his supervisor, Charles Johnson ("Johnson"), informed Word that, due to his limited duty status, he was ineligible to receive certain overtime assignments. Although Word received notice of the alleged discriminatory practice at that time, he did not request an appointment with an Equal Employment Opportunity ("EEO") counselor until March 2, 1998. Word attributes this delay to a "verbal trust agreement" which he claims existed between himself and Johnson. As Word

2

described it, the agreement was intended "to allow time for clerical grievances to be concluded, and at that time I could start getting overtime opportunities again." (A. 58) (Letter from Word to Sharon R. Dove, Appeals Review Examiner, EEO Compliance and Appeals, 8/31/98) (hereinafter "Dove letter"). At that time, there was in fact a pending clerical grievance relating to overtime opportunities, which had been initiated by the American Postal Workers Union ("APWU").

In September 1996, having determined that clerical grievances "were never going to conclude," (A. 58) (Dove letter), Word filed a series of discrimination-based grievances through his own union, the National Association of Letter Carriers ("NALC"); these grievances were based on Word's claim that he was being discriminated against as to overtime opportunities. On March 2, 1998, a Union Management Pairs team ("UMPS") issued a decision in connection with one of Word's NALC grievances, remanding the issue of Word's overtime opportunities in the first two quarters of 1997. That same day, apparently motivated by the "incompetent reasoning" of the UMPS decision and the fact that management had not, in Word's estimation, lived up to the verbal trust agreement, Word "felt it was time to file the EEO complaint" and contacted the EEO counselor for the first time. (A. 59) (Dove Letter).

Word filed his EEO complaint on June 5, 1998. On October 27, 1998, the USPS issued a final agency determination, dismissing Word's complaint as untimely. Word appealed this decision to the Equal Employment Opportunity Commission/Office of

3

Federal Operations ("EEOC/OFO"). On June 2, 1999, the USPS and the NALC reached a settlement resolving Word's grievances pertaining to the last two quarters of 1997 and the first two quarters of 1998.[1] The EEOC/OFO notified the parties that it was closing Word's appeal on the basis of this settlement. Word sought reconsideration of that decision, explaining that the settlement did not address overtime opportunities denied to Word between 1995 and June 1997. On September 19, 2000, the EEOC/OFO denied Word's Request for Reconsideration.

Word commenced this Title VII action on December 23, 2002. Defendant moved for summary judgment on July 8, 2004, arguing that Word had failed to timely exhaust his administrative remedies. After rejecting Word's contention that the timing requirement should be equitably tolled in light of the alleged verbal trust agreement, the District Court granted the motion. This appeal followed.

## II.

When a review of the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(c). We are required to view the facts in the light most favorable to Word, the non-moving party, and accept his allegations as true, provided that they find support in the factual record. Kopec v. Tate,

---

[1] Word's grievance pertaining to the first two quarters of 1997, which had been the subject of the March 2, 1998 UMPS decision, ultimately proceeded to arbitration; an award was issued on December 26, 1998.

361 F.3d 772, 775 (3d Cir. 2004).

Title VII establishes the exclusive remedy for federal employees alleging discrimination in the workplace. Robinson v. Dalton, 107 F.3d 1018, 1020-21 (3d Cir. 1997). As a precondition to suit, plaintiffs in Title VII cases are required to exhaust their administrative remedies, and the failure to do so "is an affirmative defense in the nature of statute of limitations." Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997).

Pursuant to EEOC regulations, a federal employee who intends to file an administrative charge of discrimination on the basis of disability must contact an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). Word acknowledges, as he must, that he failed to satisfy this timing requirement by waiting until March 2, 1998—more than two years after Word first became aware of the allegedly discriminatory overtime policy at the USPS—to contact an EEO counselor. He argues, however, that this deadline should be equitably tolled in this case to account for Word's reliance on the verbal trust agreement.

Word is correct that, because the exhaustion requirement is not jurisdictional in nature, administrative timing requirements are subject to the doctrine of equitable tolling. Robinson, 107 F.3d at 1021-22. Specifically, Title VII's administrative timing requirements may be equitably tolled where: (1) the defendant has actively misled the plaintiff as to the cause of action; (2) the plaintiff has "in some extraordinary way" been prevented from timely asserting his rights; or (3) the plaintiff has timely but mistakenly

5

asserted his rights in the wrong forum. Id. at 1022. We agree with the District Court, however, that none of the recognized bases for tolling the administrative timing requirements are implicated in this case.

Word's central argument in favor of tolling is his alleged reliance on the verbal trust agreement which supposedly arose during his December 1995 conversation with Johnson.[2] The precise contours of this agreement are far from clear. In an August 1998 letter to the EEO Examiner assigned to his complaint, Word wrote, as we noted above, that "[t]he agreement was to allow time for clerical grievances to be concluded, and at that time I could start getting overtime opportunities again." (A. 58) (Dove letter). More recently, however, Word added a material detail to his story, alleging for the first time in an affidavit presented to the District Court that Johnson had "specifically told me not to file an EEO Complaint since there [was a] pending grievance which would resolve the problem." (A. 107) (Word Affidavit). In granting defendant's motion for summary judgment, the District Court refused to consider the additional details averred in Word's affidavit, finding them to be wholly unsupported by the previously developed factual record. See Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993) ("Self-serving affidavits without factual support in the record will not defeat a motion for summary judgment."). We need not reach that issue, however, because we conclude that

---

[2] This argument appears to target the second of the enumerated bases for equitable tolling set forth above.

equitable tolling would be inappropriate even under the circumstances alleged in Word's affidavit.

Elsewhere in his affidavit, Word claims that "I did not immediately contact the EEO about the discrimination . . . because the defendant promised me that it would be solved by a grievance then pending." (A. 108) (Word Affidavit) (emphasis added). Assuming, arguendo, that such a verbal trust agreement existed, Word violated its terms by filing additional, discrimination-based grievances with his own union, rather than waiting for the APWU grievance (the only grievance pending in December 1995) to be resolved. In short, Word's commencement of additional grievances in September 1996 effectively terminated any verbal trust agreement which may have existed, vitiating any possible grounds for tolling.[3]

Accordingly, even assuming that the 45-day timing requirement did not begin to run until September 1996, it would have expired long before Word contacted an EEO counselor in March 1998.[4] As such, Word failed to properly exhaust his administrative

---

[3] To the extent that Word advances an alternative theory of estoppel in his brief to us, we observe the statement in his August 1998 letter that he commenced the NALC grievances on the basis of his determination that the APWU grievance "[was] never going to conclude." Accordingly, we conclude that Word had, by his own admission, ceased to rely on Johnson's supposed representations as to the efficacy of the APWU grievances by September 1996.

[4] Although Word does not press this issue on appeal, we note that his commencement of grievance procedures pursuant to anti-discrimination provisions of the operative collective bargaining agreement does not fall within the purview of our third basis for equitably tolling an administrative timing requirement—i.e. the timely assertion of rights in a mistaken forum. See Int'l Union of Elec., Radio & Mach. Workers v. Robbins &

7

remedies and is barred from maintaining this action under Title VII.

## III.

For the foregoing reasons, the September 9, 2004 order of the District Court will

be affirmed.

<hr>

Myers, Inc., 429 U.S. 229, 236 (observing that "contractual rights under a collective-bargaining agreement and the statutory right provided by Congress under Title VII have legally independent origins and are equally available to the aggrieved employee" (internal quotation marks omitted)) (1976).