

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-25-2006

# Duong v. Telford

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2902

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Duong v. Telford" (2006). *2006 Decisions*. Paper 1045.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1045

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-2902

PHONG DUONG;
THUY THI BUI, H/W

v.

TELFORD BOROUGH;
TELFORD BOROUGH POLICE DEPARTMENT;
DANIEL S. FOX, Police Officer

Daniel S. Fox,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 03-cv-02985
(Honorable Mary A. McLaughlin)

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 27, 2006
Before: SCIRICA, *Chief Judge*, NYGAARD and ALARCÓN[*], *Circuit Judges*

(Filed: May 25, 2006)

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

---

[*]The Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Judicial Circuit, sitting by designation.

Officer Daniel Fox appeals the District Court's denial of summary judgment on his qualified immunity defense to Phong Duong's excessive force claim under 42 U.S.C. § 1983, holding factual disputes allowed Duong to present his case to a jury. We will dismiss for lack of jurisdiction.

## I.

Because we write only for the benefit of the parties, a brief recitation of the facts will suffice. On May 10, 2001, Officer Daniel Fox of the Telford Borough police entered Appellee Phong Duong's home in response to a call that three suspicious Asian men had entered Duong's house. Fox heard shouting from inside the house. He opened the door and saw Duong on his back with an Asian man on top of him. Three other Asian men were in the house, and a woman was standing near the steps. As Fox called for backup, all of the men ran to the back of the house. Fox believed he had walked in on a violent domestic dispute (it was in fact a robbery in progress) and did not know the identity of the homeowner.

Duong, holding a knife, chased the other men to the back of the house. Fox followed them. Fox testified that he yelled "Police, stop," and seeing Duong with a knife in his right hand, told Duong to drop the knife. Duong testified that he did not see Fox or hear anything before he was shot by Fox.

Amid shouting, Duong heard his wife say in Vietnamese that the police were there and that he should sit down. The parties dispute Duong's position and movements at this

2

point.  Duong's expert stated he was thirteen feet away from Fox when he was shot.

Duong's son had measured the distance as ten feet.

Fox testified he fired his weapon because he thought he was going to be attacked.

He stated Duong turned toward him, began walking toward him, and lowered his body

posture—as if Duong were crouching and ready to leap.  Fox described his reaction as a

reflex: he did not aim or point the gun in any way.

Duong testified that Fox shot him the moment he sat down.  According to Duong,

he was sitting with his knees bent and with his buttocks resting on the back of his shoes.

He stated he was holding the knife away from his body—to the right, away from Fox—in

the direction of the three Asian men.  Duong's expert stated the bullet passed through

Duong's outstretched right arm, which was pointing to the right wall, and away from Fox.

When Fox shot Duong, Duong fell to the floor and dropped his knife.  He told Fox

he was the homeowner.  Fox called for an ambulance and held the other men at gunpoint

until backup arrived.  Duong was hospitalized and the other men were arrested.

## II.

## A.

Generally, we may hear appeals only from "final decisions" of the district courts.

*See* 28 U.S.C. § 1291.  Although a District Court's denial of summary judgment is not

normally a final order within the meaning of § 1291, we will hear appeals if the District

Court's decision meets the criteria of the collateral order doctrine.  In qualified immunity

3

cases, we are especially cognizant of the need for resolution at the earliest possible stage of litigation. *See Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002).

But "the imperative to decide qualified immunity issues early in the litigation is in tension with the reality that factual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established constitutional right." *Id.* at 278. An order denying a defendant's motion for summary judgment when the question centers on qualified immunity can be appealed if the defendant is a public official, and "if the issue on appeal is whether the facts alleged by the plaintiff demonstrate a violation of clearly established federal law, not which facts the plaintiffs might be able to prove at trial." *Rivas v. City of Passaic*, 365 F.3d 181, 191 (3d Cir. 2004) (quoting *Johnson v. Jones*, 515 U.S. 304, 307 (1995)). When there is a disputed question of material fact "relevant to the immunity analysis," granting summary judgment for the defendant on the basis of qualified immunity "will be premature." *Curley*, 298 U.S. at 278. Although "we lack jurisdiction to consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove," we nonetheless "possess jurisdiction to review whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right." *Rivas*, 365 F.3d at 193 (quoting *Ziccardi v. City of Philadelphia*, 299 F.3d 57, 61 (3d Cir. 2002)).

Accordingly, to the extent Fox asks us to review whether the District Court "correctly identified the set of facts that the summary judgment record is sufficient to

4

prove," we lack jurisdiction. As Fox acknowledges, "the Trial Court set forth facts relied upon to deny qualified immunity."

B.

The only questions properly before us are whether the facts identified by the District Court are sufficient to establish a violation of Duong's Fourth Amendment rights, and whether those rights were "clearly established."

We exercise plenary review of the District Court's denial of summary judgment. *See Creque v. Texaco Antilles Ltd.*, 409 F.3d 150, 152 (3d Cir. 2005) (citing *Curley*, 298 F.3d at 276). Summary judgment is proper when the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). We view the inferences to be drawn from the underlying facts in the light most favorable to Duong. *See Kopec v. Tate*, 361 F.3d 772, 775 (3d Cir. 2004). When Duong's allegations conflict with those of Fox, we take Duong's allegations as true if supported by proper proofs. *See id.*

To state a claim for excessive force under the Fourth Amendment, Duong must show "that a 'seizure' occurred and that it was unreasonable." *Kopec*, 361 F.3d at 776. Fox does not dispute seizure. The only question here is whether the facts cited by the District Court were sufficient for a jury to find that seizure unreasonable.

Under the reasonableness prong, a court must determine whether, "under the totality of the circumstances, the officer['s] actions are objectively reasonable in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or

5

motivations." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)) (internal citations omitted). In assessing reasonableness, a court may consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 776–77. A court might also take into account "the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Id.* at 777 (citing *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)).

The "objective reasonableness" test of an officer's actions is meant to give "deference to the judgment of reasonable officers on the scene," and we are "cautioned against the 20/20 vision of hindsight." *Saucier v. Katz*, 533 U.S. 194, 205 (2001). Fox argues the District Court erred by not employing this standard when it listed Duong's "surrendering position" as a fact from which the jury could infer a Fourth Amendment violation. Fox contends he had no way of knowing Duong "intended to surrender by squatting down on his heels," and thus did not have this information at his disposal. Appellant Br. at 21. But the District Court did not hold Duong's *intent* was a factor the jury could take into account. Rather, it held Duong's *description* of his physical

6

position—something objectively observable—was a fact from which a jury could infer unreasonableness. The District Court did not err in its application of the legal standard.[1]

In holding the evidence was sufficient for a reasonable jury to find a Fourth Amendment violation, the District Court relied on disputed facts related to Duong's position and proximity from Fox at the time the shooting occurred. According to the District Court, taking the facts articulated in the light most favorable to Duong, because he was sitting down, thirteen feet away from Fox, pointing his knife away from the officer, and because Fox himself did not give a command to drop the knife and fired his weapon as a reflex action, a reasonable jury could determine Fox's shooting violated Duong's Fourth Amendment rights. The District Court drew this conclusion even after recognizing "the high pressure inherent in the quickly evolving events that Officer Fox encountered in the Duong residence." App. at 10a; Mem. Op. at 7.

Presented with only these limited facts taken in the light most favorable to Duong, and drawing all reasonable inferences in his favor, we agree with the District Court. With his knife pointed away, a jury might believe Duong posed no imminent or actual threat. Without a command to drop the knife, a jury might believe it was unreasonable for an officer armed with a gun to reflexively shoot a man with a knife pointed in a different

---

[1]Regardless, the phrase "surrendering position" was used once, in a footnote discussing Fox's subjective understanding of the events he was witnessing. The District Court in this footnote argued that if the events were to be described as a violent domestic dispute, under the "totality of these circumstances," Fox's actions would be "less reasonable." App. at 11a; Mem. Op. at 8 n.3. But in other descriptions of the facts directly relevant to its determination, the District Court only used the phrase "sitting" or "sitting position." Appendix at 11a, 12a; Mem. Op. at 8, 9.

7

direction. A jury might also believe that, because Duong was in a sitting position, he was not "actively resisting arrest" or trying to evade capture.[2]

This case is similar to *Curley v. Klem*, in which—viewing the facts in the light most favorable to the plaintiff—we decided a reasonable fact finder could conclude the plaintiff's Fourth Amendment rights were violated. There, the plaintiff claimed he was shot even though his weapon was pointed away from the officer, even though he never aimed the weapon at the officer, even though he turned away from the officer to retreat, and even though there was "ample evidence" suggesting he was not a suspect. 298 F.3d at 280.

Under this set of facts, a reasonable jury could come to the conclusion Duong's Fourth Amendment rights were violated.[3]

C.

_____

[2]We note also that the presence of other relevant factual issues available to but not considered by the District Court likely would not have altered the outcome here. For example, Fox argues police officers in Pennsylvania "are trained that if a person with a knife is within 21 feet of the officer the person with the knife is able to stab and cut the officer even if the officer uses his gun to protect himself." Appellant Br. at 20. Against this assertion, Duong maintains "[t]he Police Department also had a policy that it was excessive force to shoot a suspect armed with a knife who was at the far side of the room." Appellee Br. at 18. As with most other issues raised by the parties in their briefs, these are factual disputes that a fact finder must resolve.

[3]Fox asks us to focus, inter alia, on the short time frame (five seconds) from when he called for backup to when he fired his weapon; on Duong's panicked state; on being outnumbered five to one; and on the confusing events of the crime scene to militate against the evidence Duong presented. Although a jury could find Fox's actions were reasonable under the circumstances, Duong has presented sufficient evidence for a jury to find otherwise.

8

The second prong of the qualified immunity analysis asks if the right violated is "clearly established." *Saucier*, 533 U.S. at 201. A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Atkinson v. Taylor*, 316 F.3d 257, 261 (3d Cir. 2003) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.

Under this prong of the qualified immunity analysis, the District Court held "disputed issues of material fact with regard to Mr. Duong's position and movement at the time of the shooting must be resolved by a jury before a court can determine whether it would have been clear to a reasonable officer that Officer Fox's conduct was unlawful." App. at 12a; Mem. Op. at 9. The District Court cited *Curley*, in which we held disputed issues of material fact prevented us from determining whether the rights violated were clearly established. *See Curley,* 298 F.3d at 282–83. Because of the need to tailor a qualified immunity inquiry to the specific facts of the case, the District Court did not err.

But the Supreme Court has cautioned us against denying summary judgment, as a matter of course, every time there is a disputed material issue of fact on a Fourth Amendment claim. *Saucier*, 533 U.S. at 202. "The right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999).

9

Fox acknowledges "the right to be free from excessive force was established long before" the events at the center of this litigation. Appellant Br. at 25. He argues, however, that "there is no case involving the instant factual scenario that established use of deadly force in this circumstance is a violation of constitutional rights." *Id.*

But "there does not have to be a precise factual correspondence between the case at issue and a previous case in order for a right to be clearly established." *Kopec*, 361 F.3d at 778 (quoting *People of Three Mile Island v. Nuclear Regulatory Comm'rs*, 747 F.2d 139, 144–45 (3d Cir. 1984)). Courts are not required to "agree[ ] upon the precise formulation of the standard." *Atkinson*, 316 F.3d at 261-62. If the facts of one case are not distinguishable "in a fair way" from a set of facts that courts have already articulated as constituting a violation, then an officer is not entitled to qualified immunity. *Id.* at 262. The "appropriate level of specificity" required for Fox to be on notice that his conduct was unreasonable need not reach a level of precise equivalence.

The Supreme Court has held the use of deadly force "[w]here the suspect poses no immediate threat to the officer and no threat to others" is not justified. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). However, "[w]here the officer has probable cause to believe that the suspect poses a threat of physical harm, either to the officer or to others," deadly force may be justified. *Id.* Although the Supreme Court articulated its holding in the context of an officer pursuing a suspect fleeing arrest—rather than, as here, an officer using deadly force in apparent self-defense—we have adopted a "broad view of what constitutes an established right of which a reasonable person would have known." *Kopec*,

10

361 F.3d at 778.  The District Court did not err, and appropriately denied summary judgment to allow the jury to resolve factual disputes.[4]

III.

We will dismiss for lack of jurisdiction.

---

[4]Fox also claims that, under the third prong of the *Saucier* analysis, even if the right had been "clearly established," his mistake was nonetheless a "reasonable one" as a matter of law.  *See Saucier*, 533 U.S. at 206.  Provided factual disputes resolve the immunity questions in Duong's favor, if Fox is able to prove he held a mistaken belief as to the law's requirements, he should escape liability.  *See Bennett v. Murphy*, 274 F.3d 133, 137 (3d Cir. 2002) ("*Saucier*'s holding regarding the availability of qualified immunity at the summary judgment stage does not mean that an officer is precluded from arguing that he reasonably perceived the facts to be different from those alleged by the plaintiff.  An officer may still contend that he reasonably, but mistakenly, believed that his use of force was justified by the circumstances as he perceived them; this contention, however, must be considered at trial.")