NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1098
_____

DEMIAN BOROFF,
                    Appellant

v.

DETECTIVE II N. LYNN,  in his individual and official capacity;
(full name currently unknown); TROOPER J. L. SCHMIEL, in his individual and official
capacity; (full name currently unknown); DETECTIVE BREWER, in his individual and
official capacity; (full name currently unknown); DSG T. PRESTON, in his individual
and official capacity; (full name currently unknown); NEW JERSEY STATE POLICE;
NEW MEADOWLANDS STADIUM CO LLC, n/k/a Metlife Stadium;
NEW MEADOWLANDS STADIUM SAFETY SERVICES;
NEW JERSEY SPORTS & EXPOSITION AUTHORITY


_____


On Appeal from the District Court
for the District of New Jersey
(D.C. Civil No. 2-11-cv-06849)
District Judge: Honorable Esther Salas

_____


Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 14, 2016

Before: MCKEE, Chief Judge, AMBRO, and SCIRICA, Circuit Judges

(Filed: February 25,2016)

_____

OPINION[*]

_____

**SCIRICA**, *Circuit Judge*

Demian Boroff appeals the grant of summary judgment in favor of New Jersey

State Police Trooper George Brewer on Boroff's 42 U.S.C. § 1983 claim for use of

excessive force by a state police officer.[1] We will affirm.[2]

I.

Except where noted, the recited facts are undisputed.[3] On November 21, 2010,

Boroff attended a New York Jets football game at New Meadowlands Stadium (now

MetLife Stadium). Before entering the stadium, and in the span of fifteen minutes, Boroff

consumed three to four vodka-cranberry cocktails. Once inside, he purchased a beer, and

upon reaching his seat, remained standing and began "trying to get the crowd going" by

"raising [his] hands" and shouting, "Let's Go Jets." When the crowd around him did not

respond, Boroff became angry and disruptive, yelling at the crowd using profane

language. Stadium personnel asked Boroff to sit down, but Boroff refused. Stadium

personnel then invited Boroff to the concourse area, out of view of the other fans, where

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Boroff does not appeal the trial court's grant of summary judgment in favor of Trooper Brewer on his state-law claims for negligence, assault, and battery.

[2] The trial court had subject-matter jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291.

[3] The background facts are taken from the parties' statements of undisputed material facts.

they advised Boroff he could return to his seat if he would stop his disruptive conduct. Boroff refused and continued to use profanity. Stadium personnel then escorted Boroff to the processing office.

The processing office is located in a highly secure area beneath the stadium seats. Members of the public are not permitted in this area unless escorted by stadium personnel or the New Jersey State Police. The area houses a Transportation Security Administration screening area for players and coaches, a New Jersey State Police office, team locker rooms, and a tunnel that opens directly onto the football field.

Initially, stadium personnel told Boroff he could not bring his wife into the processing office with him and Boroff refused to enter without her. Eventually his wife was permitted to enter, but inside Boroff became a "little aggressive," attempted to leave the office, and "got physical" with one of the security officers. Stadium personnel then brought Boroff across the hall to the New Jersey State Police office where he was processed, charged with disorderly conduct under N.J.S.A. 2C:33-2, and issued a summons. Two state troopers then attempted to escort Boroff out of the stadium.

At this point, Boroff, who was highly intoxicated, tried on multiple occasions to evade his escort. Twice Boroff even kicked out his feet and fell to the ground, causing the troopers escorting him to stumble and requiring their assistance to pick him up. As they neared the stadium's exit, Boroff broke free of the troopers' grasp and turned completely around, veering from the exit. Trooper Brewer reached out to regain control of Boroff

3

and allegedly tackled him,[4] causing him to fall and fracture his left ankle. The troopers carried Boroff back to the New Jersey State Police office and from there Boroff was transported to Hackensack University Medical Center for treatment of his fractured ankle.

II.

Boroff filed a multi-count complaint including 42 U.S.C. § 1983 claims against four state troopers for the use of excessive force under the Fourth Amendment.[5] After discovery, the state-trooper defendants, including Brewer, moved for summary judgment. In his response to the motion, Boroff conceded Brewer was the "only responsible party for [allegedly] tackling [him] to the ground," and consented to dismissing the remaining individual defendants from the case. Accordingly, the trial court dismissed the remaining individual defendants, and, finding no evidence supporting the allegations of excessive force, granted Brewer summary judgment.[6] In the alternative, the court also determined

---

[4] Boroff claims he was tackled to the ground by Brewer. Brewer "testified that he and/or [Boroff] lost their footing and fell to the floor." There was some video footage of the incident, but the trial court found it was not dispositive. On a motion for summary judgment, we review the evidence and draw inferences in the light most favorable to Boroff, the non-moving party.

[5] Boroff also alleged Eighth Amendment excessive-force claims against the troopers, and state negligence claims against the New Jersey State Police, New Meadowlands Stadium, LLC, and the New Jersey Sports and Exposition Authority. Boroff's Eighth Amendment claims against the troopers and all of his claims against the New Jersey Sports & Exposition Authority and New Meadowlands Stadium were dismissed via separate stipulations prior to the motion for summary judgment.

[6] We exercise plenary review over the trial court's grant of summary judgment, applying the same rule of law the trial court should have used. *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). A trial court grants summary judgment only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether there is a genuine dispute, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

that Brewer was shielded from liability under the doctrine of qualified immunity.[7]

On appeal, Boroff raises two arguments: (1) the court erred in granting summary judgment because there are material issues of fact regarding the use of excessive force, and (2) Brewer was not entitled to qualified immunity. Because we will affirm on the first issue, we will not address whether Brewer was shielded from liability under qualified immunity.

### III.

Boroff contends Brewer used excessive force when he allegedly tackled Boroff to the ground after Boroff tried to escape his escort. When assessing a Fourth Amendment excessive-force claim,[8] we must consider whether the officer's use of force was objectively reasonable under the circumstances regardless of the officer's underlying motive or intentions. *Graham v. Connor*, 490 U.S. 386, 397 (1989). We determine whether a particular use of force is reasonable "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and we take into consideration "that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97; *see also Kopec v. Tate*, 361 F.3d 772, 776–77 (3d Cir. 2003) (when determining the reasonableness of an officer's use of force, we consider whether "the suspect poses an immediate threat to the safety of the

---

[7] The trial court explained it did not need to consider Brewer's alternative argument, but chose to do so anyway.

[8] Section 1983 claims alleging a "law enforcement official used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' . . . . are properly analyzed under the Fourth Amendment's 'objective reasonableness standard,' rather than under a substantive due process standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989).

officer or others").

Assuming Brewer intentionally brought Boroff to the ground, his actions are reasonable from the perspective of a reasonable officer on the scene when considering the nature of the area in which Boroff was being escorted, Boroff's aggressive actions toward the troopers, and his multiple attempts to escape or evade the troopers who were escorting him out of the stadium. It is undisputed that Boroff was inebriated, disorderly, uncooperative, and combative in a restricted area that opened onto the playing field. It is also undisputed that immediately before the incident, Boroff tried to spin out of the troopers' grasp four or five times. As such, Brewer's use of force to constrain Boroff was reasonable. That he was allegedly trying to escape each time to find his wife does not make Brewer's response to these efforts any less reasonable.

Whether Brewer "tackled" Boroff because he was allegedly "fed up" with Boroff is immaterial—on these facts, the subjective motives or intentions of Brewer are not relevant in determining whether his use of force was reasonable.

IV.

We will affirm the trial court's grant of summary judgment in favor of Trooper Brewer.