**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2204
_____

RICHARD RIVERA,
                              Appellant

v.

LAKE COMO; KEVIN E. JONES, JR.; ALEX FAY; ADAM LEVINE;
JOHN DOES 1-5, (fictitious individuals), members of the Lake Como Police
Department; FRED HOPE, Chief of Police;
JOHN DOES 6-10 (fictitious individuals), Personnel of the Lake Como Police
Department, in their supervisory capacities
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-16-cv-00318)
District Judge: Honorable Peter G. Sheridan
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 26, 2018
_____

Before:  HARDIMAN, VANASKIE and SHWARTZ, *Circuit Judges*

(Filed:  May 1, 2018)
_____

OPINION[*]
_____

_____

    [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

VANASKIE, *Circuit Judge.*

Appellant Richard Rivera claims the District Court erred by granting qualified immunity in favor of the Defendant Police Officers on his claims brought under 42 U.S.C. § 1983 for use of excessive force and failure to intervene during his arrest. For the reasons stated below, we will affirm the order of the District Court entered on May 9, 2017.

**I.**

On July 5, 2014, Rivera hosted a barbecue at his home. Alcoholic beverages were served, and Rivera had been drinking. That night, Rivera and several friends traveled to Bar Anticipation ("Bar A") in Lake Como, New Jersey. Around 10:30 p.m., a disturbance arose among the bar patrons. Bar A staff demanded that Rivera and his group leave, and there ensued "pushing and shoving in the group and yelling." (JA-53.)

Lake Como Police Officers Alex Fay and Adam Levine had been assigned to that area and were observing the commotion. Officer Levine testified that one could "smell the alcohol in the area, and "[t]he way [Rivera] was yelling and the manner [in which] he was acting" led the officers to believe that Rivera was intoxicated. (*Id.*) Officer Fay decided to approach the group.

Officer Fay asked Rivera to leave the area multiple times, but Rivera refused to comply. According to Rivera, he had been trying to put his shoe back on, but Officer Fay continuously pushed him. In response, Rivera told Officer Fay to "cut it the f*** out[,]" (*id.* at 71), and that "if [Officer Fay] wasn't a police officer, . . . [Rivera] would kick his a**." (*Id.* at 72.) As noted by Officer Fay in his Investigation Report, Rivera also stated

2

that "he did ten years in state prison, [and] if [Officer Fay] [would] take off [his] badge and gun[,] . . . [they] could fight[,] and that if he saw [Officer Fay] off duty [he] would be done . . . ." (*Id.* at 113.)[1]

Officer Fay then informed Rivera that he was being arrested, and attempted to place Rivera's hands behind his back to handcuff him. Rivera was not compliant, at which point Officers Levine and Fay "brought [him] down to the ground" to handcuff and arrest him for disorderly conduct. (*Id.* at 114.) After the arrest, Officers Levine and Fay filled out Use of Force Reports noting that they used a "[c]ompliance hold" and "[h]ands/fists" techniques after Rivera "[r]esisted police officer control." (*Id.* at 116-17.)

Rivera was subsequently transported to Lake Como Police Station for fingerprints and photographs, and was released on his own recognizance. Upon his release from the police station, Rivera went to the Jersey Shore University Medical Center where he was treated for a sprained left hand and contusions to his face, head, knees, and hand. Rivera testified that he was tackled and "kicked in the side of [his] face" during the course of his arrest, and had to use his hands to break his fall. (*Id.* at 63.)

Rivera was found guilty in municipal court of Disorderly Conduct, in violation of N.J. Stat. Ann. § 2C:33-2(a), and Resisting Arrest, in violation of N.J. Stat. Ann. § 2C:29-2(a)(1). He subsequently filed this civil rights action against the municipality of Lake Como, Chief of Police Fred Hope, and Officers Fay, Levine, and Kevin Jones—

---

[1] Rivera denied making the precise statement attributed to him in Officer Fay's Investigation Report, but, as noted above, did admit telling Officer Fay that "if he wasn't a police officer, that I would kick his a**." (JA-72.)

who was also present during the arrest.  Rivera voluntarily dismissed the claims against Lake Como and Chief Hope, as well as all but one of the state law claims against the officers.  Only claims for excessive force by the officers and failure to intervene, as well as a claim brought under the New Jersey Civil Rights Act, remained.

The day before Officer Levine's deposition in this case, Officers Levine and Fay exchanged the following text messages:

> Officer Levine: Hey, bro, how did the deposition bulls*** go?...
> Officer Fay: Kevin Jones had his yesterday….
> Officer Levine: LOL, this whole thing is a joke.  Did he [say] how it went?
> Officer Fay: Said it was the same questions as the trial went.  Pay the c*** and be done with it.
> Officer Levine: Agree.

(JA-111-12) (altered to include speaker attributions and readability).

Officers Jones, Fay, and Levine moved for summary judgment, seeking qualified immunity.  The District Court heard argument and issued an oral opinion from the bench.  Regarding Rivera's excessive force claim, the District Court considered the following factors and found that the officers' actions were "objectively reasonable" under the circumstances: Rivera had been drinking; it was late in the night; Bar A staff asked Rivera's group to leave; there was "friction between the bouncers and Mr. Rivera and his group"; Rivera used foul and threatening language toward Officer Fay; and the officers did not use weapons during Rivera's arrest.  (JA-14-15.)  Additionally, the Court determined that the text message conversation between Officers Fay and Levine was inadmissible as evidence of excessive force because it occurred "way after the accident."

4

(*Id.* at 16.)  The Court thus granted qualified immunity in favor of the officers because, although they used force while effectuating Rivera's arrest, it was not excessive under the circumstances.  The Court similarly granted qualified immunity in favor of the officers on Rivera's failure to intervene claim.  Rivera timely appealed.[2]

## II.

The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), and 1367.  We have jurisdiction under 28 U.S.C. § 1291.  We review the District Court's grant of summary judgment *de novo*.  *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 170 (3d Cir. 2011).  We review the District Court's evidentiary ruling regarding the text messages for abuse of discretion.  *Old Chief v. United States*, 519 U.S. 172, 174 n.1 (1997).

## III.

On appeal, Rivera argues that there are genuine disputes of fact material to the question of whether Officers Fay and Levine used excessive force, precluding summary judgment on the question of qualified immunity.  Rivera also argues that the text message conversation should be admitted because it is "highly probative as to whether or not [the officers] used excessive force."  (Appellant's Br. at 31.)  Neither argument has merit.

## A.

---

[2] Following Rivera's Notice of Appeal to our Court, we sought clarification as to the disposition of Rivera's claim brought under the New Jersey Civil Rights Act.  In response, the District Court issued a supplemental order dismissing this claim.  Rivera does not challenge this order on appeal, so we accordingly decline to address it.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine "protect[s] all but the plainly incompetent or those who knowingly violate the law." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 254 (3d Cir. 2010) (citations and internal quotation marks omitted).

Qualified immunity involves a two-step inquiry: first, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right"; and, if so, as "the right . . . clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson*, 555 U.S. at 236. We have discretion to analyze these steps "in the order we deem most appropriate for the particular case before us." *Santini v. Fuentes*, 795 F.3d 410, 418 (3d Cir. 2015).

As to the second part of the two-step inquiry, there is no dispute that the "right of an arrestee to be free from the use of excessive force in the course of his handcuffing" is clearly established. *Kopec v. Tate*, 361 F.3d 772, 778 (3d Cir. 2004). There is also no dispute that a law enforcement officer has a clearly established duty to intervene to stop the use of excessive force. *See Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) ("a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior.") The dispositive issue here, therefore, is whether the evidence presented on the summary

6

judgment motion was sufficient to establish, as a matter of law, that the amount of force employed by Officers Fay and Levine was objectively reasonable.

To determine whether the amount of force used during an arrest was "objectively reasonable," we examine the following factors: "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and must take into account the fact that officers are often forced to make "split-second judgments" regarding the amount of force necessary. *Id.* at 396-97. "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' . . . violates the Fourth Amendment." *Id.* at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

In this case, the undisputed facts show that the force employed was objectively reasonable. First, there is no dispute that there was an altercation inside Bar A that resulted in Rivera and his party being escorted out of that establishment. Second, there is no dispute that Rivera and his party were upset at being removed from Bar A, and they were loud and raucous. Third, Officers Fay and Levine had probable cause to arrest

Rivera for disorderly conduct.[3] Fourth, Rivera resisted Officer Fay's efforts to cuff him.[4]

And finally, the amount of force was limited to that reasonably necessary to bring Rivera

under control and to place handcuffs on him. In this regard, the actions of the officers in

subduing Rivera lasted only about thirty seconds, and Rivera sustained only a sprained

wrist and some bruises and abrasions. We are convinced that, under the circumstances

confronting Officers Fay and Levine, a reasonable officer on the scene would have

employed some degree of force, and we agree with the District Court that the amount of

force used was reasonable. We thus affirm the District Court's grant of summary

judgment under the doctrine of qualified immunity on Rivera's excessive force claim.

Because we conclude that Rivera's excessive force claim is without merit, the

failure to intervene claim necessarily also fails. We thus affirm the District Court's grant

of qualified immunity on Rivera's failure to intervene claim.

---

[3] Indeed, Rivera was found guilty of disorderly conduct under N.J. Stat. Ann. § 2C:33-2(a), which provides:

> A person is guilty of a petty disorderly persons offense, if with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof he
> (1) Engages in fighting or threatening, or in violent or tumultuous behavior; or
> (2) Creates a hazardous or physically dangerous condition by any act which serves no legitimate purpose of the actor.

[4] Notably, Rivera was found guilty of resisting arrest under N.J. Stat. Ann. § 2C:29-2(a)(1), which required the State to prove that Rivera "purposely prevent[ed] or attempt[ed] to prevent a law enforcement officer from effecting an arrest." *Id.* Although the resisting arrest conviction does not in and of itself preclude an excessive force claim, *see Nelson v. Jashurek*, 109 F.3d 142, 145-46 (3d Cir. 1997), it does support the conclusion that the officers were justified in using force to effect the arrest.

**B.**

We next address the District Court's refusal to admit the text message conversation into evidence. Evidence must be relevant to be admissible. *See United States v. Browne*, 834 F.3d 403, 409 (3d Cir. 2016). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

Rivera argues—as he did before the District Court—that the text message conversation is an admission by Officers Fay and Levine that they used excessive force during Rivera's arrest. The District Court, however, did not reach the hearsay exceptions or exclusions, finding that the conversation was irrelevant because it occurred "way after the accident," and thus was "of little or no value" and "not . . . probative of the facts before the Court." (JA-16.)

We agree. Rivera fails to demonstrate that a casual text message conversation between Officers Fay and Levine two years after the incident is a reliable measure of the degree of force they used during the arrest. We thus find that the District Court did not abuse its discretion in holding that the text message conversation was irrelevant.

**IV.**

For these reasons, we will affirm the order of the District Court entered on May 10, 2017.