**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4174
_____

MARVA BAEZ,
INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE
OF LUIS VILLAFANE, DECEASED,

Appellant

v.

LANCASTER COUNTY; VINCENT GUARINI, WARDEN LANCASTER COUNTY
PRISON; CORRECTIONAL OFFICER BYRD; CORRECTIONALOFFICER SHEPPO;
CORRECTIONAL OFFICER PLUMBER; DOE 1-10, CORRECTIONAL OFFICERS;
JACOBS, CORRECTIONAL SERGEANT; PRIMECARE MEDICAL INC., CARL A.
HOFFMAN, JR., D.O., CCHP, PRESIDENT AND CORPORATE
MEDICAL DIRECTOR; DR.ROBERT DOE; NURSE CINDY DICKERT

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5-09-cv-02745)
District Judge: Honorable Lawrence F. Stengel

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 8, 2012

BEFORE: SCIRICA, GREENAWAY, JR. and COWEN,  Circuit Judges

(Filed: July 2, 2012)

---

OPINION

---

COWEN, <u>Circuit Judge</u>.

Plaintiff brought this action pursuant to 42 U.S.C. § 1983 on behalf of her brother, Luis Villafane, who took his own life while in pretrial detention at Lancaster County Prison ("LCP") from September 22, 2008 through November 19, 2008. Plaintiff alleges that defendants violated Villafane's Eighth and Fourteenth Amendment rights because they were deliberately indifferent to Villafane's serious medical condition, which led to his suicide, and used excessive force on Villafane while he was in custody. The district court granted defendants' motion for summary judgment and dismissed plaintiff's claims.

We review a grant of summary judgment de novo and apply the same standard as the district court. *Kopec v. Tate*, 361 F.3d 772, 775 (3d Cir. 2004). Under that standard, we conclude that there are no genuine issues of material fact and will affirm the district court's judgment. *Id.*

**(A)** To establish a claim for deliberate indifference on the basis of Villafane's suicide, plaintiff must show "(1) the detainee had a 'particular vulnerability to suicide,' (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers 'acted with reckless indifference' to the detainee's particular vulnerability." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Even assuming that Villafane had a "particular vulnerability to suicide," no reasonable juror

2

could conclude, based on the evidence, that the likelihood of suicide was "so obvious" or "easily recognized" to a layperson that the officers "knew or should have known" of that vulnerability. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 320 (3d Cir. 2005). Here, Villafane expressed a suicidal ideation to Officer Jacob while being taken to the medical unit. The following day he was evaluated by the psychologist who did not think that Villafane was suicidal. Nevertheless, Villafane remained in the medical unit and under suicide watch for approximately a week. He showed signs of improvement and was taken off suicide watch, given access to sheets and his possessions, and remained in the medical unit for approximately another ten days. His psychologist observed that he had improved and Villafane asked to go back to general population. The day before Villafane was transferred back to general population by Officer Byrd, he had been evaluated by the psychologist who confirmed that Villafane was not suicidal. Byrd testified that Villafane seemed in good spirits. Considering that no suicide attempt was ever made while in detention and Villafane had been given access to bed sheets and his possessions while still in the medical unit, the possibility that he might commit suicide as evidenced by his suicidal ideations 18 days earlier does not support a "'strong likelihood of suicide . . . so obvious that a lay person would easily recognize'" it. *Id.* (quoting *Colburn*, 946 F.2d at 1025). Indeed, the likelihood that Villafane would harm himself was not obvious to the psychologist, let alone a layperson.

There is also no evidence of "reckless indifference." "Reckless indifference" has been treated synonymously with "deliberate indifference" and "gross negligence," and

3

requires "'a level of culpability higher than a negligent failure to protect from self-inflicted harm.'" *Id.* at 321 (quoting *Colburn*, 946 F.2d at 1025). When Villafane expressed his suicidal thoughts to Jacob, Jacob alerted the nurse and Villafane was subsequently put on suicide watch. He was under the care and evaluation of the psychologist for the entire 18 days that he was in the medical unit, and taken off suicide watch after 7 days. For the brief time Villafane was under Byrd's charge, the evidence suggests that Byrd was sensitive to his mental state of mind and checked in with him to ensure that he was okay. He told Villafane to talk to him if he needed anything. Nothing in Byrd's interactions with Villafane suggested that Villafane was suicidal.

Even in the light most favorable to the plaintiff, the evidence suggests that all those in charge of Villafane were sensitive to a potential that Villafane was suicidal and took more than necessary precautions based on the available information and circumstances as they appeared. Indeed, the only evidence that suggests that defendants were anything less than sensitive to Villafane's state of mind was a speculation by one of the inmate witnesses that Officer Shepos told Villafane to kill himself on the day of the incident; the parties agree that Officer Shepos was not working that day. Even if he had been, since there is no other evidence that Shepos knew or should have known of a substantial risk that Villafane would harm himself, this potential comment by Shepos is not sufficient for plaintiff to succeed on her deliberate indifference claim. And nothing suggests who else heard that comment and could be considered to have been deliberately indifferent to it. *See Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 466 (3d Cir.

4

1989) (plaintiffs had adduced some circumstantial evidence tending to show deliberate indifference, but it was not enough to survive summary judgment). In light of the foregoing, the defendants were not deliberately indifferent to Villafane's medical needs.

**(B)** The only actions implicated by plaintiff's excessive force claim are those of Sergeant Jacob. Jacob used an Electronic Body Immobilization Device ("EBID") to subdue Villafane when he refused to return to his cell after several requests and a physical struggle. To establish a claim for use of excessive force in violation of the Due Process Clause of the Fourteenth Amendment, plaintiff must show that the force used was applied "maliciously and sadistically to cause harm" and not "in a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). In making this inquiry, the Supreme Court has highlighted five factors: "(1) the need for the application of the force;" (2) "the relationship between the need and the amount of force that was used;" (3) "the extent of the injury inflicted;" (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them;" and (5) "any efforts made to temper the severity of a forceful response." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Here, Sergeant Jacob used the EBID only after repeated attempts to get Villafane to return to his cell and the use of less force did not work. He used the EBID for approximately ten seconds, subdued Villafane, and took him to the medical unit for treatment of his injuries. There is no evidence that malice instigated the use of force. In light of the necessity to maintain order and Villafane's disobedience, Sergeant Jacob's

5

conduct does not "shock[ ] the conscience." *Fuentes v. Wagner*, 206 F.3d 335, 349 (3d Cir. 2000).

**(C)** Plaintiff must establish an underlying constitutional violation to attribute liability to the County pursuant to *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978). For the foregoing reasons, she has not done so. The claim against Warden Guarini in his official capacity is duplicative of the suit against the County. As a result, summary judgment was properly granted in favor of the County and Warden Guarini in his official capacity.

The judgment of the district court is affirmed.